UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* <br> ARCHITEL SYSTEMS CORPORATION, <br>     Foreign Applicant in a Foreign Proceeding. | Chapter 15 <br> Case No. 16-_____ (___) <br> (Joint Administration Requested) |
| *In re:* <br> NORTEL COMMUNICATIONS INC., <br>     Foreign Applicant in a Foreign Proceeding. | Chapter 15 <br> Case No. 16-_____ (___) <br> (Joint Administration Requested) |
| *In re:* <br> NORTHERN TELECOM CANADA LIMITED, <br>     Foreign Applicant in a Foreign Proceeding. | Chapter 15 <br> Case No. 16-_____ (___) <br> (Joint Administration Requested) |

**VERIFIED PETITIONS FOR RECOGNITION OF FOREIGN
PROCEEDING AND RELATED RELIEF**

Ernst & Young Inc. is the court-appointed monitor (the "**Monitor**") and authorized foreign representative of Architel Systems Corporation ("**Architel**"), Nortel Communications Inc. ("**Nortel Communications**"), and Northern Telecom Canada Limited ("**Northern Telecom**," and collectively, the "**New Canadian Debtors**") in proceedings (the "**Canadian Proceedings**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (the "**CCAA**"), pending before the Ontario Superior Court of Justice, Commercial List (the "**Ontario Court**").

The Monitor has commenced these chapter 15 cases ancillary to the Canadian Proceedings and respectfully files these *Verified Petitions for Recognition of Foreign Proceeding and Related Relief* (the "**Chapter 15 Petitions**"), with accompanying documentation, pursuant to

sections 1504 and 1515 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") seeking the entry of an order substantially in the form annexed hereto as <u>Exhibit A</u> (the "**Proposed Order**") (i) recognizing the Canadian Proceedings as "foreign main proceedings" with respect to the New Canadian Debtors under section 1517 of the Bankruptcy Code and (ii) giving full force and effect in the United States to the Order of the Ontario Court dated March 18, 2016, including any extensions or amendments thereof authorized by the Ontario Court (the "**New Applicants Order**").[1]

In support of the Chapter 15 Petitions, the Monitor respectfully states as follows:

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper in this District pursuant to 28 U.S.C. §§ 1410(1) and (3). The statutory predicates for the relief requested herein are sections 105(a), 1504, 1507, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## BACKGROUND

1. The Canadian Proceedings were originally commenced on January 14, 2009 (the "**Filing Date**"), by Nortel Networks Corporation ("**NNC**"), Nortel Networks Limited ("**NNL**"), and certain of their affiliates (collectively, the "**Existing Canadian Debtors**," and together with the New Canadian Debtors, the "**Canadian Debtors**"). On that same date, the Ontario Court entered an order appointing the Monitor and providing the Existing Canadian Debtors with, among other things, stay relief to protect their business and property (as amended and restated, the "**Initial Order**"). The Existing Canadian Debtors also commenced cases in this

---

[1] A copy of the New Applicants Order is annexed as Exhibit 1 to the Proposed Order.

District in respect of the Canadian Proceedings under chapter 15 of the Bankruptcy Code, which cases are jointly administered under the caption *In re Nortel Networks Corporation, et al.*, Case No. 09-10164 (KG) (the "**Existing Chapter 15 Cases**").

2. In addition, on or after that date, Nortel Networks Inc., Nortel Networks Capital Corporation, and certain of their affiliates (collectively, the "**US Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, and various Nortel entities in Europe, the Middle East, and Africa (the "**EMEA Debtors**") became the subject of English-law administration proceedings in the High Court of Justice of England and Wales under the *Insolvency Act 1986*.

3. By order of this Court in the Existing Chapter 15 Cases dated February 27, 2009, the Canadian Proceedings were recognized as "foreign main proceedings" with respect to the Existing Canadian Debtors, the Monitor was found to be the "foreign representative" of the Existing Canadian Debtors, and the Initial Order was given full force and effect in the United States.

4. As of the Filing Date, NNC and NNL had nine wholly-owned Canadian subsidiaries that did not file for protection under the CCAA because they were dormant entities without active business operations. During the course of the Canadian Proceedings, six of these subsidiaries have been dissolved in accordance with applicable corporate law. The three remaining subsidiaries are the New Canadian Debtors:

- Architel is a wholly-owned subsidiary of NNC incorporated under the laws of Canada. Architel's only assets include (i) certain receivables due from its affiliates, including a net receivable due from NNL in the amount of USD 14.27 million, and (ii) an equity interest in Architel Systems

3

(U.S.) Corporation, a US Debtor, to which Architel owes a payable of approximately CAD 2.33 million. In addition, Architel may have a tax liability of approximately CAD 15,000. The Ontario Ministry of Revenue has a Personal Property Security Act (Ontario) registration against Architel in the amount of CAD 15,672.

- Nortel Communications is a wholly-owned subsidiary of NNL incorporated under the laws of Ontario. Nortel Communications' only assets are receivables due from: (i) NNL in the amount of $80.7 million; and (ii) Nortel Networks International Finance & Holding B.V., an EMEA Debtor, in the amount of $7.4 million.

- Northern Telecom is a wholly-owned subsidiary of NNL incorporated under the laws of Canada. Northern Telecom's assets include a receivable due from NNL in the amount of CAD 40,000.

5. To the knowledge of the Monitor, none of the New Canadian Debtors have active business operations, bank accounts, or unaffiliated third-party creditors, with the exception of the tax liability Architel may owe to the Ontario Ministry of Revenue. The Monitor is authorized and empowered to direct the administration of the New Canadian Debtors and does so from its offices in Canada.

6. The New Canadian Debtors likely cannot be wound up at this time, as the assets of the New Canadian Debtors consist in large part of intercompany receivables owed by other Nortel entities in insolvency or similar proceedings across multiple jurisdictions. In order to provide for the efficient final resolution of the New Canadian Debtors' affairs and to help the maximize the value of their assets for the benefit of their respective stakeholders, the New

Canadian Debtors filed an application to commence proceedings under the CCAA on March 9, 2016.

7.      On March 18, 2016, the Ontario Court entered the New Applicants Order, procedurally consolidating the CCAA proceedings for the New Canadian Debtors into the Canadian Proceedings and deeming each of the New Canadian Debtors to be an "Applicant" in the Canadian Proceedings, thereby placing all of the Canadian Debtors into the same process in Canada. Further, the New Applicants Order entitles the New Canadian Debtors to the rights, benefits, and protections of, and subjects the New Canadian Debtors to, certain orders entered for the benefit of the Existing Canadian Debtors during the course of the Canadian Proceedings. These orders, which have also been given full force and effect in the United States by order of this Court in the Existing Chapter 15 Cases, are: (i) the Initial Order;[2] (ii) the Order of the Ontario Court dated August 14, 2009 expanding the power and authority of the Monitor;[3] and (iii) the Order (Monitor's Expansion of Power Order # 2) of the Ontario Court dated October 3, 2012, further expanding the power and authority of the Monitor (collectively, the "**Adopted CCAA Orders**").[4]

## RELIEF SOUGHT

8.      By these Chapter 15 Petitions, the Monitor seeks the following relief:

(A)     recognition, pursuant to section 1517 of the Bankruptcy Code, of the Canadian Proceedings as "foreign main proceedings," with respect to the New Canadian Debtors;

---

[2]   *See Order Granting Recognition and Related Relief*, Existing Chapter 15 Cases Dkt. No. 40 (Bankr. D. Del. February 27, 2009).
[3]   *See Order Enforcing Monitor's Role and Authority Order of the Ontario Court*, Existing Chapter 15 Cases Dkt. 154 (Bankr. D. Del. August 31, 2009).
[4]   *See Order Enforcing Monitor's Expanded Powers Order of the Ontario Court*, Existing Chapter 15 Cases Dkt. No. 520 (Bankr. D. Del. November 6, 2012).

(B) all relief afforded foreign main proceedings automatically upon recognition pursuant to section 1520 of the Bankruptcy Code, including, without limitation, application of the stay imposed by section 362 of the Bankruptcy Code;

(C) enforcement of the New Applicants Order in the United States pursuant to sections 105(a), 1507, and 1521of the Bankruptcy Code; and

(D) such other and further relief as is appropriate under the circumstances pursuant to sections 105(a), 1507, and 1521, of the Bankruptcy Code.

## BASIS FOR RELIEF

*Recognition of the Canadian Proceedings With Respect to the New Canadian Debtors*

9. Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of a United States bankruptcy court in connection with a foreign proceeding. *See* 11 U.S.C. § 1501(b)(l). The Canadian Proceedings are entitled to recognition under section 1517 of the Bankruptcy Code with respect to the New Canadian Debtors because, among other things:

(A) the Canadian Proceedings are "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code;

(B) the Canadian Proceedings are "foreign main proceedings" with respect to the New Canadian Debtors within the meaning of section 1502(4) of the Bankruptcy Code because the Canadian Proceedings are pending in the center of main interests for each of the New Canadian Debtors;

(C) the Monitor is a "person" within the meaning of section 101(41) of the Bankruptcy Code and a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code; and

(D) the Chapter 15 Petitions were filed in accordance with sections 1504 and 1509 of the Bankruptcy Code and meet the requirements of sections 1504 and 1515 of the Bankruptcy Code.

10. Moreover, recognizing the Canadian Proceedings would not be manifestly contrary to the public policy of the United States, as prohibited by section 1506 of the Bankruptcy Code. In fact, granting recognition will promote the United States public policy of respecting foreign proceedings as articulated in, *inter alia*, sections 1501(a) and 1508 of the Bankruptcy Code and further cooperation between courts to the maximum extent possible as mandated by section 1525(a) of the Bankruptcy Code. Thus, the circumstances satisfy the conditions for mandatory recognition of the Canadian Proceedings under section 1517 of the Bankruptcy Code.

A. **The Canadian Proceedings are "Foreign Proceedings"**

11. The Canadian Proceedings are "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code. That section provides, in pertinent part, as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). The CCAA, like the Bankruptcy Code, provides a statutory means for applicants thereunder to reorganize or wind down their affairs under the supervision of a court.

7

Here, as with the Existing Canadian Debtors, the New Canadian Debtors have commenced proceedings under the CCAA in order to facilitate the final resolution of their operations and maximize the value of their assets for the benefit of stakeholders under the supervision of the Ontario Court. Indeed, the Canadian Proceedings have already been recognized as "foreign proceedings" as to the Existing Canadian Debtors[5] and serve the same underlying purpose with respect to the New Canadian Debtors. Accordingly, these chapter 15 cases concern "foreign proceedings" as to the New Canadian Debtors within the meaning of section 101(23) of the Bankruptcy Code.

### B. The Canadian Proceedings are "Foreign Main Proceedings"

12. The Canadian Proceeding should be recognized as a "foreign main proceeding," as defined in section 1502(4) of the Bankruptcy Code. The Bankruptcy Code provides that a "foreign proceeding" that is the subject of a chapter 15 petition must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its "center of . . . main interests." 11 U.S.C. § 1517(b)(1). While the Bankruptcy Code does not define this concept, courts equate a debtor's "center of main interests" with its principal place of business, examining factors such as the location of the debtor's headquarters, management, assets, creditors, and the jurisdiction of controlling law. *See In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 70 (Bankr. S.D.N.Y. 2011) ("In determining the COMI of a foreign debtor, cases have examined a number of factors, including: the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.") (*quoting In re*

---

[5] *See supra* note 2

*SPhinX*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007); *In re Bear Stearns*, 374 B.R. at 128 (same). Further, section 1516(c) of the Bankruptcy Code provides that in the absence of evidence to the contrary, the debtor's center of main interests is presumed to be located at its registered office. 11 U.S.C. § 1516(c).

13. Canada is the jurisdiction with which each of the New Canadian Debtors has the most significant nexus, as: (i) each of the New Canadian Debtors is incorporated in Canada; (ii) Architel is a wholly-owned subsidiary of NNC, while Nortel Communications and Northern Telecom are wholly-owned subsidiaries of NNL; and (iii) among the most significant assets of each is a large receivable due from NNL. Further, in accordance with the New Applicants Order, the Monitor is authorized and empowered to direct the administration of the New Canadian Debtors and does so from its offices in Canada. Accordingly, the Canadian Proceedings are pending where each of the New Canadian Debtors has its center of main interests and constitute "foreign main proceedings" with respect to the New Canadian Debtors as defined in section 1502(4) of the Bankruptcy Code.

C.  **These Cases were Commenced by a "Foreign Representative"**

14. These cases were commenced by the Monitor, the duly-authorized, court-appointed "foreign representative" of the New Canadian Debtors within the meaning of section 101(24) of the Bankruptcy Code. That section defines a "foreign representative," in pertinent part, as a "person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). Under the Adopted CCAA Orders, as made applicable to the New Canadian Debtors through the New Applicants Order, the Monitor has the same authorization and power with respect to New Canadian Debtors as it has with respect to the Existing Canadian Debtors, including the express authority and power under the Initial Order to

apply for recognition of the Canadian Proceedings as "foreign main proceedings" under chapter 15 of the Bankruptcy Code. Section 6 of the New Applicants Order further authorizes the Monitor to apply for recognition of the Canadian Proceedings in respect of the New Canadian Debtors in the United States. Accordingly, the Monitor qualifies as a "foreign representative" for the New Canadian Debtors under section 1516(a) of the Bankruptcy Code.

**D.      These Cases were Properly Commenced under Chapter 15**

15.     The Monitor duly and properly commenced the cases, as required by sections 1504 and 1509 of the Bankruptcy Code, by filing the Chapter 15 Petitions under section 1515(a) accompanied by all documents and information required by section 1515(b) and (c). *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."). Because the Monitor has satisfied the requirements set forth in section 1515 of the Bankruptcy Code, it has properly commenced these cases.

**E.      The Monitor is Entitled to an Order Granting Recognition of the Canadian Proceeding as a Foreign Main Proceeding**

16.     As evidenced above, the Canadian Proceedings are "foreign main proceedings" with respect to the New Canadian Debtors within the meaning of section 1502(4) of the Bankruptcy Code, the Monitor applying for recognition is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, and the Chapter 15 Petitions meet the requirements of section 1515 of the Bankruptcy Code. Section 1517(a) of the Bankruptcy Code provides, in pertinent part, that "[s]ubject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—(1) such foreign

proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515. 11 U.S.C. §1517(a). Accordingly, the Monitor respectfully submits that the Court should enter an order recognizing the Canadian Proceeding as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code.

### *Enforcement of the New Applicants Order*

17. In connection with the recognition of the Canadian Proceeding as a "foreign main proceeding," the Monitor also seeks an order enforcing the New Applicants Order in the United States.

18. Section 1507 of the Bankruptcy Code provides that, "if recognition is granted," a court "may provide additional assistance to a foreign representative under this title or under other laws of the United States." 11 U.S.C. § 1507. Similarly, section 1521(a) of the Bankruptcy Code provides that, upon recognition of a foreign proceeding, and "where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of any creditors, the court may grant any appropriate relief . . . ." 11 U.S.C. § 1521. Such relief includes, among other things, "granting any additional relief that may be available to a trustee," with certain exceptions that are not relevant here. *Id.* Finally, section 105(a) of the Bankruptcy Code allows the Court to "issue any order… necessary or appropriate to carry out the provisions of [title 11]."

19. Among other things, the New Applicants Order procedurally consolidates the CCAA proceedings for the New Canadian Debtors into the Canadian Proceedings and deems each of the New Canadian Debtors to be an "Applicant" in the Canadian Proceedings. Further,

the New Applicants Order entitles the New Canadian Debtors to the rights, benefits, and protections of, and subjects the New Canadian Debtors to, the Adopted CCAA Orders, with the result that: (i) the New Canadian Debtors have the benefit of the stay of proceedings and other protections granted under the Initial Order and (ii) the Monitor has the same powers, obligations, and protections with respect to the New Canadian Debtors as it does with respect to the Existing Canadian Debtors, including the authority to exercise any power which may be properly exercised by a board of directors of any of the New Canadian Debtors. Such relief is consistent with relief available in plenary cases in the United States, and further, each of the Adopted CCAA Orders has already been given full force and effect in the United States with respect to the Existing Canadian Debtors.[6] The New Applicants Order merely extends the application of the Adopted CCAA Orders to the New Canadian Debtors.

20. The Monitor believes that enforcement of the New Applicants Order is necessary to give effect to such order in the United States and create consistency in both Canada and the United States with respect to the administration of all Canadian Debtors. Accordingly, this Court should give full force and effect in the United States to the New Applicants Order under well-established principles of international comity and pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, the Monitor respectfully requests that this Court grant these Chapter 15 Petitions and enter the Proposed Order recognizing the Canadian Proceedings as "foreign main proceedings" with respect to the New Canadian Debtors, enforcing the New

---

[6] *See supra* notes 2, 3, and 4.

Applicants Order in the United States, and granting such other relief as is appropriate under the circumstances.

Dated: Wilmington, Delaware
      December 21, 2016

**BUCHANAN INGERSOLL & ROONEY**

By: /s/ Mary F. Caloway
Mary F. Caloway (No. 3059)
Kathleen A. Murphy (No. 5215)
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
(302) 552-4200 (telephone)
(302) 552-4295 (facsimile)
mary.caloway@bipc.com
kathleen.murphy@bipc.com

-and-

**ALLEN & OVERY LLP**

Ken Coleman
Jonathan Cho
1221 Avenue of the Americas
New York, New York 10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
ken.coleman@allenovery.com
jonathan.cho@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor and Foreign Representative of the New Canadian Debtors*